UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Case No. 1:09-CR-175** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN M. O'MALLEY** |
| v. | : | |
| **KEAHMBI K. COLEMAN,** | : | **MEMORANDUM & ORDER** |
| **Defendant.** | : | |

Before the Court is Defendant Keahmbi K. Coleman ("Defendant" or "Coleman"), who pled guilty to a one-count indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The government and Coleman did not reach a plea agreement with respect to this conviction, in part because of a debate as to the application of the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), to Coleman's sentence.

The parties submitted sentencing memoranda in September 2009, and the Court conducted a sentencing hearing on October 20, 2009.[1] At the hearing, the Court found that § 924(e) is applicable to Coleman's sentence and therefore imposed the mandatory minimum sentence of 180 months, to be followed by three years of supervised release. This Opinion addresses the Court's conclusions regarding the application of § 924(e) and the exercise of its discretion under 18 U.S.C. § 3553(a). Although the Court finds that it is required to apply the ACCA sentence enhancement, it notes that this case demonstrates the problems inherent in statutorily mandated minimum sentences.

---

[1] The parties asked the Court to delay the originally-scheduled sentencing to allow them an opportunity to negotiate a possible stipulated sentence. When no agreement was reached, the Court proceeded with the October 20, 2009 sentencing.

**I.     BACKGROUND**

On April 8, 2009, Coleman was indicted by a federal grand jury for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). This charge arose after police responded to a domestic dispute which led to Coleman's arrest. When the officers searched Coleman, they discovered a firearm in his back pocket. The firearm at issue was an inoperable and dilapidated firearm frame which Coleman asserts he found in his backyard and put in his pocket so that his children, and other children in the neighborhood, would not find it. (Doc. 17 at 4.) Consistent with Coleman's description, the police report indicates that the firearm had no trigger/trigger assembly and was not readily-operable. (Doc. 17-2.)

On June 12, 2009, the government notified Coleman of its intent to seek an enhanced sentence pursuant to the Armed Career Criminal Act, based on Coleman's three prior convictions for: (1) burglary in 2002; (2) attempted burglary in 2002; and (3) burglary in 2005. (Doc. 13.)

Subsequently, on June 15, 2009, Coleman pled guilty to being a felon in possession of a firearm without a written plea agreement.

The parties do not dispute that Coleman has three (3) prior potentially qualifying convictions for ACCA purposes. It is undisputed that, in 2002, Coleman pled guilty to, and was convicted of, burglary and attempted burglary in violation of O.R.C. § 2911.12. It is also undisputed that Coleman was convicted of, and pled guilty to, burglary in 2005. As to the 2002 incidents, Coleman concedes that the burglary and attempted burglary were separate criminal episodes committed on different occasions.[2]

---

[2] Although the government's sentencing memorandum solely addresses the issue of whether Coleman's 2002 burglary and attempted burglary convictions resulted from distinct criminal episodes, defense counsel clarified prior to the sentencing hearing that this was not an argument upon which the Defendant intended to rely in contesting the application of the ACCA.

2

The Presentence Investigation Report ("PSR") indicates, and the parties agree, that, in the absence of the ACCA's statutory mandate, Coleman's Base Offense Level under the United States Sentencing Guidelines ("the Guidelines") would be 24. (Doc. 21 at 8:5-21.) It is further undisputed between the parties that Coleman is entitled to a full three level reduction for acceptance of responsibility, which would bring his Adjusted Offense Level to 21. The PSR indicates that Coleman has seven (7) criminal history points which corresponds to Criminal History Category IV. Therefore, in the absence of the ACCA, the advisory sentencing range under the Guidelines would be 57 to 71 months.[3]

In light of his prior convictions, however, the PSR recommended that Coleman be classified as an armed career criminal under the ACCA, which would result in a mandatory minimum sentence of 180 months.[4] Coleman objected to the PSR's conclusion that he qualifies as an armed career criminal.

At the sentencing hearing on October 20, 2009, defense counsel objected to the use of

---

(Sentencing Transcript, Doc. 21 ("Doc. 21") at 9:10-22.)

[3]Defense counsel objected to the PSR, contending that Coleman's total offense level is 21 and his criminal history category is III, which would make the advisory sentencing range 46 to 57 months. The Court's conclusion that the ACCA applies to Coleman's sentence rendered resolution of this objection unnecessary.

[4]The PSR indicates that Coleman's prior convictions for burglary and attempted burglary trigger application of § 924(e), and that Coleman, therefore, is an armed career criminal within the meaning of U.S.S.G. § 4B1.4. The base offense level under § 4B1.4 is 33. Because the parties agree Coleman should receive a three level reduction for acceptance of responsibility, his total adjusted offense level would be a 30. An offense level of 30 and a criminal history category of IV would result in an advisory 135 to 168 month custody range. At the hearing, the parties agreed that, because the Court concluded that § 924(e) applies, a mandatory minimum sentence of 180 months is required regardless of what the guidelines, or a discretionary application of the sentencing factors set forth in 18 U.S.C. § 3553(a) would otherwise advise. (Doc. 21 at 24:12-19.)

3

Coleman's prior burglary and attempted burglary convictions as predicate offenses under the ACCA. At the hearing, the Court concluded that Coleman's prior convictions constitute "violent felonies" for ACCA purposes. Accordingly, the Court sentenced Coleman to the mandatory minimum term of 180 months to be followed by three years of supervised release.

## II. ANALYSIS

Under ordinary circumstances, a defendant convicted of being a felon in possession in violation of 18 U.S.C. § 922(g)(1) faces a maximum prison sentence of ten (10) years. 18 U.S.C. § 924(a)(2). Pursuant to the Armed Career Criminal Act, a convicted felon found guilty of possessing a firearm in violation of § 922(g)(1), who has three prior convictions for "a violent felony or a serious drug offense," is subject to a mandatory minimum sentence of fifteen (15) years of imprisonment. 18 U.S.C. § 924(e)(1).

Coleman asserts two primary arguments in support of his request that he not be subject to the ACCA sentence enhancement. First, Coleman argues that, because Ohio's burglary statute is non-generic, his previous convictions for burglary and attempted burglary do not qualify as "violent felonies" within the meaning of the ACCA. Second, Coleman argues that application of the ACCA in this case is fundamentally unfair and violative of his due process rights.

For the reasons discussed below, the Court finds that Coleman's prior burglary and attempted burglary convictions qualify as "violent felonies" under the ACCA and that application of the fifteen (15) year mandatory minimum sentence is statutorily required. The Court further finds that, although the ACCA's application is harsh, and is particularly so on the facts presented here, it does not violate Coleman's constitutional right to due process.

### A. Coleman Has Three Prior Convictions Which Qualify as "Violent Felonies" Under the ACCA.

The critical inquiry for purposes of the ACCA is whether Coleman's prior convictions qualify as "violent felony" convictions. The ACCA defines a "violent felony" as any crime punishable by imprisonment for more than one year which:

(i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another

18 U.S.C. § 924(e)(2)(B).  The government bears the burden of establishing that a conviction qualifies for an ACCA enhancement.  *United States v. Goodman*, 519 F.3d 310, 316 (6th Cir. 2008).

One of the specifically enumerated offenses set forth in § 924(e)(2)(B)(ii) is burglary.  The Supreme Court has indicated that:

> Congress singled out burglary . . . for inclusion as a predicate offense . . . because of its inherent potential for harm to persons. The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate. And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape.

*Taylor v. United States*, 495 U.S. 575, 588 (1990).  Although the ACCA does not define the term "burglary," the Supreme Court has held that, for purposes of an ACCA sentence enhancement, burglary means "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  *Id.* at 599.  This definition of burglary is referred to as "generic burglary," while state burglary statutes that punish a broader scope of conduct are referred to as "non-generic burglary" statutes.  *Id*.  The ACCA makes burglary a "violent felony" sufficient to qualify as an ACCA

5

predicate only if it is "generic burglary." *Shepard v. United States*, 544 U.S. 13, 15-16 (2005) ("The Act makes burglary a violent felony only if committed in a building or enclosed space . . . not in a boat or motor vehicle.").

A prior burglary conviction can qualify as an ACCA predicate if it either: (1) amounts to generic burglary; or (2) falls within the residual "otherwise" clause set forth in § 924(e)(2)(B)(ii).

### 1. Coleman's Prior Burglary and Attempted Burglary Convictions Do Not Amount to Generic Burglary for ACCA Purposes.

Coleman contends that his prior convictions for burglary and attempted burglary in violation of O.R.C. § 2911.12, do not constitute "violent felonies" for purposes of the ACCA because Ohio's burglary statute is non-generic. While Coleman is correct that Ohio's burglary statute is non-generic, the Court nevertheless finds, consistent with Sixth Circuit precedent, that his prior burglary and attempted burglary convictions qualify as "violent felonies" for purposes of the ACCA because they fall within the residual "otherwise clause" set forth in § 924(e)(2)(B)(ii).[5]

#### a. The Categorical Approach to Determining Whether a Prior Conviction was for Generic Burglary

Because burglary is an enumerated "violent felony" under the ACCA, the Court first considers whether Coleman's prior burglary and attempted burglary convictions constitute generic burglaries. *See Taylor*, 495 U.S. at 599-600. In *Taylor*, the Supreme Court instructed sentencing

---

[5] At the sentencing hearing, the Court made alternative holdings with respect to the application of ACCA's sentence enhancement. Specifically, the Court expressed the belief that Ohio's burglary statute was not as broad as defense counsel suggested, but concluded that, even if it was, the Court had sufficient information, including the indictments and journal entries for the underlying convictions, to conclude that Coleman had been convicted of generic burglary. In the alternative, the Court indicated that Coleman's prior convictions qualified as violent felonies under the residual "otherwise clause" of the ACCA. (Doc. 21 at 15:9-22.) Upon further review, and as discussed in detail below, the Court concludes that the latter basis is the correct analysis under recent Supreme Court and Sixth Circuit precedent, and is what requires imposition of a 180 month sentence in this case.

courts to take a "categorical approach" to determine whether a defendant's prior conviction was for generic burglary. 495 U.S. at 600-601. This approach generally requires that the court "look only to the fact of conviction and the statutory definition of the prior offense" and not undertake an analysis of the defendant's particular conduct. *Id*. at 602. The Court recognized an exception to this "categorical approach" for a "narrow range of cases where a jury [in a state with a non-generic burglary statute] was actually required to find all the elements of generic burglary." *Id*.

Where a state has a non-generic burglary statute, the sentencing court can look to: (1) the statutory definition to determine whether the statute "substantially corresponds" to "generic burglary;" or (2) the charging paper and jury instructions to determine if they "actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id*. By way of example, the Court stated that:

> in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

*Id*.

The Supreme Court subsequently held that the "categorical approach" set forth in *Taylor* applies to convictions based on guilty pleas. *Shepard*, 544 U.S. at 26. In *Shepard*, the Court stated that, where a defendant pleads guilty to a non-generic burglary statute, a sentencing court can consider "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id*. at 26. These sources are referred to as "*Shepard* sources." *United States v. Young*, No. 2007-cr-102, 2007 U.S. Dist. LEXIS 84941, *10

(W.D. Mich. Nov. 16, 2007). The court may not "look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary." *Shepard,* 544 U.S. at 16. These limitations preserve the "categorical approach" set forth in *Taylor* and ensure that the defendant was convicted of "generic burglary." *United States v. Mathews,* 453 F.3d 830, 834 n.8 (7th Cir. 2006)(citing *Shepard*, 544 U.S. at 24).

In light of the framework set forth in *Taylor* and *Shepard*, a sentencing court must first determine whether the state statutory definition of burglary, by itself, supports a conclusion that the defendant was convicted of "generic burglary." *See Taylor*, 495 U.S. at 602. If the answer is affirmative, then the prior burglary conviction qualifies as a "violent felony" for § 924(e) purposes and the inquiry ends.

If, however, the state's burglary statute defines burglary more broadly than "generic burglary," then the sentencing court can also examine the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. If the *Shepard* sources reveal that all of the elements of generic burglary were satisfied, then the prior conviction qualifies as a violent felony for § 924(e) purposes.

### b. Ohio's Burglary Statute is Non-Generic.

Ohio's burglary statute provides that no person, "by force, stealth, or deception" shall:

(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;

(2) Trespass in an occupied structure or in a separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person

8

>   when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;
>
> (3) Trespass in an occupied structure or in a separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense;
>
> (4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present.

O.R.C. § 2911.12(A)(1)-(4). For purposes of the statute, an "occupied structure" means:

> any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:
>
> (1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.
>
> (2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.
>
> (3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.
>
> (4) At the time, any person is present or likely to be present in it.

O.R.C. § 2909.01(C)(1)-(4).

The Sixth Circuit has specifically found that Ohio's burglary statute extends beyond generic burglary. *United States v. Holycross*, 333 Fed. Appx. 81, 85 (6th Cir. 2009), *cert. denied*, 175 L.Ed. 2d 539 (U.S. 2009); *see also United States v. Lane*, 909 F.2d 895, 902 (6th Cir. 1990).[6] In

---

[6]Sixth Circuit Rule 28(f) explicitly provides that "[c]itation of unpublished opinions is permitted." It is well-established that, despite their non-precedential status, unpublished decisions can be of great assistance when binding authority on the issue is limited or not available. *See, e.g., U.S. v. Keith*, 559 F.3d 499, 505 (6th Cir. 2009)(noting that "[a]lthough unpublished decisions do not have precedential authority, they may be considered for their persuasive value"); *Smith v. Astrue*, 639 F.Supp.2d 836, 842 (W.D. Mich. 2009)("Non-binding decisions can have great utility when binding decisions on the contested issue are scarce . . . and where the unpublished decision addresses exactly, or almost exactly the same issue as the court

9

*Holycross*, the defendant argued that his prior convictions for burglary and attempted burglary did not qualify as violent felonies under the ACCA. *Holycross,* 333 Fed. Appx. at 85. The court, citing to *Taylor*, noted that a state law extends beyond generic burglary if it "includ[es] places, such as automobiles and vending machines, other than buildings." *Id*. (citing *Taylor*, 495 U.S. at 598).[7] Because Ohio's burglary statute covers structures other than buildings, including watercraft, aircraft, cars, trucks, trailers, and tents, the court found that it does not qualify as a generic burglary under the ACCA. *Id*.

### c. Consideration of *Shepard*-Approved Sources

Because Ohio's burglary statute extends beyond generic burglary, the Court considers *Shepard* sources to determine whether Coleman's prior convictions nonetheless amounted to generic burglary.[8] Indeed, the Sixth Circuit has specifically indicated that, because Ohio's burglary statute

---

confronts.") Although *Holycross* is an unpublished decision, to the Court's knowledge it is the only post-*Shepard* case addressing the exact same issue the Court confronts: whether, under Ohio law, burglary and attempted burglary are crimes of violence under the ACCA. In addition, the *Holycross* decision appears consistent with the Sixth Circuit's prior published decision in *Lane*, and therefore is persuasive authority guiding this Court's analysis.

[7]The Sixth Circuit reached this conclusion without addressing the fact that the Ohio statute only extends to places such as automobiles, watercraft, and other buildings to the extent it is used for or adapted for use as a permanent or temporary dwelling, is occupied for that purpose, or a person is or is likely to be present. It is this language which first led this Court to conclude that, despite references in the statute to other structures, Ohio's statute is still appropriately characterized as "generic." Indeed, the requirement that the structure, whatever it is, be used as a dwelling or habitation at the time of the offense, or that a person be present or likely to be present in the structure, would seem to limit Ohio's statutory scheme to just the type of potentially violent circumstances outlined in *Taylor* and contemplated by § 924(e). Because *Holycross* appears inconsistent with this interpretation of the Ohio statute, the Court will not rely on this reading of the Ohio scheme, and simply defers to the conclusion in *Holycross* that the scheme is "non-generic."

[8]Although the *Holycross* court found that Ohio's burglary statute was non-generic, which would typically trigger its ability to consider approved *Shepard* sources to determine whether the defendant was nonetheless convicted of generic burglary, the court instead moved directly to the

10

includes places other than buildings, it is necessary for the court to "examine the indictment to determine if [the defendant] was charged only with the burglary of a building." *Lane*, 909 F.2d at 902.[9] In *Lane*, the court found that based on the record, it was unable to determine whether the defendant's prior conviction should count as generic burglary for ACCA purposes. *Id*. The court noted, however, that the absence of a record did not prevent the court from finding the sentence enhancement appropriate under the residual "otherwise" clause. *Id*.

At the sentencing hearing, defense counsel argued that the indictments for Coleman's underlying convictions do not provide the Court with any helpful information. (Doc. 21 at 20:2-17.) Upon further review, the Court finds that, even with the aid of *Shepard*-approved sources, there is insufficient information before the Court to determine whether Coleman's prior burglary and attempted burglary convictions fall within the generic definition of burglary. Indeed, the indictments and journal entries underlying Coleman's prior convictions, which were submitted into the record by the government, merely track the language of Ohio's burglary statute and do not specifically identify the type of "occupied structure(s)" at issue.

---

residual "otherwise clause" set forth in § 924(e)(2)(B)(ii), which does not permit the court to consider *Shepard* sources. *See Holycross*, 333 Fed. Appx. at 85-86. This approach suggests that this Court need not look to *Shepard* sources to determine whether the elements of generic burglary were satisfied with respect to Coleman's prior convictions.

In an abundance of caution, and because the parties cited to *Shepard* in their arguments, the Court first looks to *Shepard*-approved sources to determine whether Coleman's prior burglary and attempted burglary convictions qualified as generic burglary. *See United States v. Stanton*, No. 3:07-cr-117, 2009 U.S. Dist. LEXIS 80426 *10 (M.D. Tenn. Sept. 1, 2009)("As the defendant pled guilty to burglary under a non-generic statute, the court should look to '*Shepard-approve*d sources' to determine if the burglary was a qualifying generic burglary under *Taylor*.").

[9] Although *Lane* was decided before *Shepard*, the *Lane* court nonetheless expressed a willingness to look to the underlying indictments to determine whether the conviction was for generic burglary.

11

> For example, the indictment related to Coleman's 2002 burglary states that Coleman:
>
> unlawfully, did by force, stealth, or deception trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, the property of Annie Lois Robinson, with purpose to commit in the structure or separately occupied portion any criminal offense and/or theft offense.

(Doc. 16-1.) Similarly, with respect to Coleman's 2002 attempted burglary conviction the indictment states that Coleman "unlawfully, did by force, stealth, or deception attempted to trespass in an occupied structure . . . the property of Annie Lois Robinson." (Doc. 20-1 at 4.)[10] The Journal Entry for Coleman's 2002 convictions reveals that he pled guilty to burglary in violation of O.R.C. § 2911.12, a third degree felony, as charged in Count 1, and guilty to attempted burglary in violation of O.R.C. § 2911.12, a fourth degree felony, as charged in Count 10. (Doc. 16-2.)

With respect to the 2005 burglary, Count 1 of the indictment states that Coleman "unlawfully did by force, stealth, or deception, trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of Stephanie Robinson Roach . . ." (Doc. 16-4). Although the 2005 indictment identifies the "occupied structure" as a "permanent or temporary habitation," it does not specify the type of structure at issue and thus it is unclear whether Coleman was charged with burglary of a building. The Journal Entry reveals only that the prosecutor amended the charge in Count 1, and Coleman pled guilty to burglary in violation of O.R.C. § 2911.12, a third degree felony. (Doc. 16-5.)

While the language of the indictments certainly implies that Coleman was convicted of precisely the type of burglaries contemplated by § 924(e) – i.e., of buildings occupied by specified persons – it is unclear whether this is, in fact, true. It remains possible that the burglaries involved

---

[10] The 2002 indictment attached as Exhibit A to the government's sentencing memorandum was incomplete. The government provided a complete version of the indictment at the sentencing hearing which can be found at Doc. 20-1.

12

a "watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter." Given this possibility, the Court cannot conclude, based solely on the indictments, that the crimes to which Coleman pled guilty amounted to generic burglary. *See Lane*, 909 F.2d at 902. The Court, accordingly, turns to the question of whether Coleman's prior burglary and attempted burglary convictions nevertheless qualify as ACCA predicates because they fall within the residual "otherwise" clause set forth in § 924(e)(2)(B)(ii); it concludes they do.

> **2. Coleman's Prior Burglary and Attempted Burglary Convictions Amount to Crimes of Violence Under the Residual "Otherwise" Clause of the ACCA.**

At the sentencing hearing, the government argued that Coleman's prior burglary and attempted burglary convictions constitute crimes of violence under the ACCA's "otherwise clause." (Doc. 21 at 14:11-21.) For the reasons discussed below, the Court agrees.

### a. The Residual "Otherwise" Clause

The Supreme Court has recognized that any offense may qualify as an ACCA predicate if it satisfies the residual "otherwise" clause set forth in § 924(e)(2)(B)(ii). *Taylor*, 495 U.S. at 600 n. 9. In *Taylor*, the Court noted that its generic definition of burglary was not the only means of satisfying § 924(e), and that the government could "argue that any offense – including offenses similar to generic burglary – should count towards enhancement as one that 'otherwise involves conduct that presents a serious potential risk of physical injury to another' under § 924(e)(2)(B)(ii)." *Id*.

An offense falls within the ACCA's residual "otherwise clause" if it: (1) presents a "serious potential risk of physical injury to others"; and (2) "involves the same kind of purposeful, violent, and aggressive conduct as the enumerated offenses of burglary, arson, extortion, or offenses

13

involving the use of explosives." *United States v. Young*, 580 F.3d 373, 377 (6th Cir. 2009)(citing *United States v. Ford*, 560 F.3d 420, 421 (6th Cir. 2009)). In other words, a court should consider whether the crime at issue is "roughly similar, in kind as well as in degree of risk posed" to the crimes enumerated in § 924(e)(2)(B)(ii). *Begay v. United States*, 128 S.Ct. 1581, 1585 (2008). In doing so, a court must "consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of th[e] particular offender." *James v. United States*, 550 U.S. 192, 202 (2007)(emphasis in original).

In a recent decision, the Supreme Court utilized the "categorical approach" set forth in *Taylor* to determine whether an attempted burglary offense fell within the ACCA's residual clause. *James*, 550 U.S. at 204-206. In *James*, the Court held that Florida's attempted burglary statute presented sufficient "potential risk of injury" to qualify under the ACCA's residual provision. *Id*. at 203-204. The Court stated that the risk posed by attempted burglary, like that posed by completed burglary, arises from

> the possibility of a face-to-face confrontation between the burglar and a third party – whether an occupant, a police officer, or a bystander – who comes to investigate. That is, the risk arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress.

*Id*. at 203. Indeed, the Court found that the risk posed by an attempted burglary may exceed the risk posed by a completed burglary because it necessarily involves a confrontation that prevents the burglar from completing the offense. *Id*. at 204.

The *James* Court clarified that the residual clause does not require "that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." *Id*. at 208. Instead, the Court indicated that the proper inquiry "is whether the conduct encompassed by the elements of the offense, in the ordinary case,

14

presents a serious risk of injury to another." *Id*. The Court concluded that as long as the offense "is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements of 924(e)(2)(B)(ii)'s residual provision." *Id*. at 209.

### b. Burglary and Attempted Burglary in Ohio Fall Within the Residual "Otherwise Clause" of the ACCA.

In a recent 2009 decision, the Sixth Circuit specifically held that prior convictions for burglary and attempted burglary "amount to crimes of violence under the residual 'otherwise' clause" of the ACCA. *Holycross*, 333 Fed. Appx. at 85. In *Holycross*, the court found that both burglary and attempted burglary under Ohio law "involve[] conduct that presents a serious potential risk of physical injury to another" and therefore are crimes of violence under the ACCA. *Id*. at 85-86 (citing *Lane*, 909 F.2d at 903). In other words, the Sixth Circuit held that the risk posed by burglary and attempted burglary is comparable to that posed by the closest analog among the offenses enumerated in the ACCA – generic burglary. *See id.* In reaching this conclusion, the court noted that it was unnecessary, and in fact improper, to look beyond the state law definition of the crime. *Id*. at 86; *see also James*, 550 U.S. at 202 (noting that courts are to examine only "whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision")(emphasis in original).

Similarly, in *Lane*, the Sixth Circuit found that burglary in Ohio "'presents a serious potential risk of physical injury to another' because the burglary statute requires the actual or likely presence of a person in the burglarized structure." *Id*. at 903. The court held that the mere fact that the defendant's prior conviction was for attempted burglary did not change the analysis because "his conviction for attempted burglary represents an intent to commit the crime." *Id*. The court further noted that the fact that the defendant did not complete the burglary did not "diminish the serious

15

potential risk of injury to another arising from an attempted burglary." *Id*. Accordingly, the court found that a prior conviction for attempted burglary qualified as a "violent felony" under the residual "otherwise" clause set forth in § 924(e)(2)(B)(ii). *Id*.

In light of the Sixth Circuit's decisions in *Holycross* and *Lane*, it is clear that burglary and attempted burglary under Ohio law: (1) pose "serious potential risk of physical injury" to others; and (2) involve the same kind of "purposeful, violent, and aggressive conduct" as the enumerated offense of generic burglary. Accordingly, Coleman's prior convictions for burglary and attempted burglary qualify as "violent felonies" under the residual "otherwise clause" of § 924(e). Because Coleman has three prior convictions for violent felonies, the ACCA sentence enhancement applies and requires a minimum sentence of 180 months.

**D.    Application of the ACCA to Coleman's Sentence Does Not Violate His Due Process Rights.**

Coleman argues that application of the ACCA to his sentence violates his due process rights because it prevents this Court from conducting an individualized sentencing analysis and considering factors bearing upon the fairness of his sentence. (Doc. 17 at 9.) Specifically, Coleman claims that application of the ACCA in his case resulted in a longer sentence than he otherwise would have received under the Sentencing Guidelines, or through any reasonable application of the § 3553(a) factors.[11] Coleman further contends that applying the ACCA to enhance his sentence is particularly egregious because he merely possessed a firearm frame which "had no trigger mechanism, was completely inoperable, and could not be made to fire." (Doc. 17 at 11.)[12]

---

[11]Coleman's counsel cited to a number of potentially mitigating factors the Court could and should normally consider in making its final sentencing determination.

[12]Coleman does not dispute that such a weapon is properly characterized as a "weapon or destructive device" under federal law and concedes that his prosecution for its possession under §

16

Coleman has cited no legal authority supporting his contention that the ACCA sentence enhancement violates his constitutional right to due process. Several courts of appeals, including the Sixth, have specifically held that the mandatory minimum sentence required by the ACCA is constitutional. *United States v. Jones*, 52 Fed.Appx. 244, 247 (6th Cir. 2002)(rejecting a defendant's equal protection and due process challenges to the ACCA "because he does not adequately explain how he has been inappropriately treated unequally or denied any due process"); *United States v. Warren*, 973 F.2d 1304, 1311 (6th Cir. 1992)(finding that sentences under the ACCA are not cruel and unusual); *United States v. Stokes*, 292 F.3d 964, 968 (9th Cir. 2002)(rejecting a defendant's equal protection and due process challenges to the constitutionality of the ACCA); *United States v. Vincent*, 901 F.2d 97, 99-100 (8th Cir. 1990)(rejecting the defendant's argument that the ACCA sentence enhancement violates his due process and equal protection rights because it "invades the province of the trial judge in the exercise of his sentencing discretion and improperly singles out certain defendants and treats them differently than other convicted felons").

Coleman is correct that under ordinary circumstances, a sentencing court has considerable discretion when determining the proper sentence for a criminal defendant. *See Gall v. United States*, 128 S.Ct. 586, 595 (2007). In those circumstances, this Court would, pursuant to 18 U.S.C. § 3553, consider and evaluate individualized sentencing factors to determine an appropriate sentence. But once Congress decides that certain crimes warrant mandatory minimum sentences, courts are no longer able to consider particular facts and individual circumstances. Both the Supreme Court and Sixth Circuit have, moreover, "previously construed the ACCA as a legitimate exercise of

---

922(g) is appropriate.

17

congressional authority." *United States v. Turner*, No. 92-5947, 1993 U.S. App. LEXIS 24100, *4 (6th Cir. Sept. 17, 1993)(citing *Taylor v. United States*, 495 U.S. 575 (1990)).

The ACCA does not permit the court to consider personal circumstances in its sentencing analysis. Instead, the ACCA requires only a finding that: (1) the defendant was convicted for being a felon in possession of a firearm; and (2) the defendant had three prior convictions for violent felonies or serious drug offenses. *See United States v. Mosley*, No. 08-1937, 2009 U.S. App. LEXIS 16953, *19 (6th Cir. July 30, 1999). Because Coleman was convicted of being a felon in possession of a firearm, and the Court finds that he has two prior convictions for burglary and one prior conviction for attempted burglary, a sentence enhancement under the ACCA is statutorily required.

The Court recognizes that imposition of the 180 month mandatory minimum sentence is a harsh result on the facts presented here. This is particularly true in light of the fact that, absent application of the ACCA, Coleman would be facing an advisory range of 57 to 71 months imprisonment under the Guidelines. Indeed, if the Court possessed *any* sentencing discretion in this case, it surely would have imposed a lesser sentence on Coleman. This is the danger that arises when Congress requires courts to apply across-the-board mandatory minimum sentences rather than affording judges discretion to make individualized sentencing determinations. As this Court indicated at the sentencing hearing, Congress did not give sentencing courts discretion to ignore the ACCA's sentencing enhancement for any particular defendant, regardless of any equities counseling it should do so. To the extent Coleman wishes to argue that courts *should* have the discretion to decline to apply this enhancement, such arguments must be directed to Congress.

### III. CONCLUSION

At the sentencing hearing, the Court found that Coleman's prior burglary and attempted burglary convictions constitute "violent felonies" for § 924(e) purposes. Accordingly, the Court sentenced Coleman to 180 months of custody, the mandatory minimum statutory sentence under the ACCA, as well as three (3) years supervised release. While the Court notes that a fifteen year sentence is harsh given the facts of Coleman's case, the Court is without discretion to depart from the mandatory minimum sentence set by Congress.

**IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

 **Dated: February 10, 2010**